UNITED STATES *v.* BORDER BROKERAGE CO., ARTHUR J. HUMPHREYS, NORMAN C. JENSEN, INC. (No. 4978) [1]

United States Court of Customs and Patent Appeals, January 19, 1960

[1] C.A.D. 732.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section, (*Murray Sklaroff*, trial attorney, of counsel) for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz*, of counsel) for appellees.

[Oral argument October 8, 1959, by Mr. Sklaroff and Mr. Schwartz]

Before WORLEY, Chief Judge, and RICH, MARTIN and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK [2]

SMITH, Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, First Division, C.D. 2020, which sustained the importers' protests and held the imported merchandise classifiable as "crude" sperm oil under the first category established in paragraph 52 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802. The importers had protested the collector's classification of the merchandise as "refined or otherwise processed" sperm oil under the second category established in the same paragraph. The relevant parts of paragraph 52 read:

Oils, animal and fish:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Sperm, crude_____ 1¼¢ per gal.
Sperm, refined or otherwise processed_____ 3½¢ per gal.

The Customs Court arrived at its decision after reviewing a number of prior decisions in which various types of merchandise has been determined to be "crude" under particular provisions of the Tariff Act. It excluded the oil from classification in the second category on the basis that it was not "refined" and that the term "otherwise processed" was, under the rule of *noscitur a sociis*, limited to processes which were the equivalent of refining.

From the testimony offered by both parties it appears that sperm oil, when removed from the whale, is a cloudy oil which contains a substantial quantity of spermaceti wax, a substance which is not desired in imports such as those at bar. The oil is clarified by the removal of a portion of the spermaceti wax to produce the 45 N.W. (natural winter) grade of oil here in issue. This is done by allowing the oil to stand at a temperature of 45 degrees F., at which temperature a portion of the spermaceti wax will settle from the oil. The supernatant oil having a reduced wax content is then drawn off. If the temperature of the untreated oil varies from 45 degrees F., it may be artificially heated or cooled as required to reach the desired 45 degrees F. temperature. The process results in a product known as 45 N.W. (natural winter) sperm oil, which may be cooled to a temper-

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of* Judge O'Connell, pursuant to provisions of Section 294(d), Title 28, United States Code.

ature of 45 degrees F. before it becomes cloudy. The untreated oil as it comes from the whale must have its spermaceti wax content reduced before it is suitable for the uses for which it is imported.

The issue is whether sperm oil which has had a portion of its spermaceti wax content removed is "processed" as this term is used in the Tariff Act provision.

There is no issue of commercial designation, and the terms are to be accorded their meaning in ordinary speech.

The testimony also establishes that the imported 45 N.W. sperm oil has a price of approximately 2 cents a pound above the price of the crude sperm oil; that spermaceti wax is a waste product which sold at about 35 or 40 percent of what it cost when purchased in the crude sperm oil; that crude sperm oil would have a higher pour point than the 45 N.W. grade; and that the specific gravity of 45 N.W. oil is slightly less than the specific gravity of the crude oil.

The *Condensed Chemical Dictionary*, Second Edition (1930), includes sperm oil with whale oil and lists "natural winter" as one of four grades of such oil. The other grades listed are: "Crude No. 1; Crude No. 2; * * *; Bleached Winter."

The steps required to produce the "natural winter" grade require a processing of the oil as it comes from the whale. Precipitation of a portion of the spermaceti wax and the separation of the supernatant oil as above described produces the merchandise here in issue which is a different grade of oil than the recognized grades of the "crude" oil.

What occurs as a result of the treatment given the imported oil is apparent when the chemical nature of sperm oil is considered. In a *Manual of Chemistry*, by Simon and Base (13th Edition, edited by John C. Krantz, Jr. [1927]), sperm oil is described as follows:

Sperm oil, obtained from the blubber and head cavity of the sperm whale, consists of esters of dodecyl alcohol, $C_{12}H_{25} \cdot OH$, cetyl alcohol, $C_{16}H_{33} \cdot OH$, and others. It is a liquid wax. From it is obtained a crystalline wax called *spermaceti*, which consists chiefly of cetyl palmitate. (p. 535)

The subjecting of the crude oil to the 45 degrees F. temperature, followed by the precipitation, and subsequent removal of a portion of the spermaceti wax fraction thus can be considered either as "refining," i.e., a purifying of the oil [3] or as a "processing," i.e., changing the proportions of the chemical constituents of the sperm oil due to the reduction in content of the cetyl palmitate (spermaceti wax).

In our opinion the facts in the present case permit this direct classification of the imported de-waxed sperm oil in the second category of paragraph 52 without requiring the court to first determine whether

---

[3] Hackh's Chemical Dictionary (1929) defines "refine" as "to free from impurities."

such an oil is "crude." For this reason, we do not think it necessary to here consider or apply the general tests of the prior cases cited by the Customs Court as supporting its decision.

It is our opinion, therefore, that the oil in issue is a de-waxed oil as a result of processing embraced within the terms "refined" or "otherwise processed" and as such that it is directly within the second category of paragraph 52 of the Tariff Act of 1930 as modified. We therefore *reverse* the judgment below.

MARTIN, J., concurs in conclusion.

———

WORLEY, Chief Judge, concurring.

While I agree with the conclusion reached by the majority, I do so on the ground that, as shown by the record, the chief use of the imported sperm oil, as such, is in the preparation of sulfated products which are distinct from sperm oil and cannot properly be designated by that name. The sperm oil, in its imported condition, is adapted for such chief use and therefore cannot be regarded as crude. *United States* v. *Danker & Marston*, 2 Ct. Cust. Appls. 522, T.D. 32251; and *Fynaut & Popek* v. *United States*, 23 CCPA 265, T.D. 48112. The cited decisions employed the standard of chief use which has been consistently applied in cases such as this, and I see no grounds here for departing therefrom.